IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAMAR D. HILL and MARKEYTA Y. JONES, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL NO. 04-678-GPM ) |
| WALTER HOOD, CLIFFORD FIELDS, VERNON EDWARDS, and EAST ST. LOUIS SCHOOL DISTRICT NO. 189, | ) ) ) ) |
| Defendants. | ) ) |

# **MEMORANDUM AND ORDER**

**MURPHY, Chief District Judge:**

Lamar Hill, a student, claims he was strip searched by Vernon Edwards, a school counselor, at the Alternative High School in Alorton, Illinois. He claims his rights to substantive due process and to be free from unlawful search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution were violated. He further claims that the principal, Walter Hood, the head teacher, Clifford Fields, and Edwards conspired to deprive him of these rights and that Edwards committed a battery on him. He also claims that Defendants falsely imprisoned him and intentionally inflicted him with emotional distress. Finally, Markeyta Jones, Hill's mother, asserts a derivative claim for medical expenses. The case came before the Court on December 19, 2005, for a hearing on Defendants' motion for summary judgment.

The standard applied to summary judgment motions filed under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows.

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted). Having carefully reviewed all of the materials submitted by the parties, almost every material fact is disputed, as set forth in the analysis below. Therefore, most of Plaintiffs' claims will proceed to trial.

Unlawful Search and Seizure

Edwards took the position at his deposition that a strip search did not occur. This is where the many factual disputes begin. It is undisputed, however, that some type of search occurred, and Hood issued a letter of reprimand on April 26, 2004. Jones and Hill testified that Edwards called them on the morning of the 21st to apologize for the strip search. Whether there was a strip search is for the jury.

Edwards argues that in any event his search of Hill was based upon a reasonable suspicion that Hill possessed drugs; therefore, under *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316 (7th Cir. 1993), he did not violate Hill's constitutional rights. His characterization of the facts known to him at the time differ from those described by Hill and even his co-Defendants, Hood and Fields.

According to Hill he entered the school, and as he approached the metal detector, he was searched per usual course, *i.e.*, pat down, by Fields. Then, Hood approached, reached in his coat pocket with a piece of paper containing marijuana and pulled it out saying, "What is this?" Fields stated, "It looks like he is about to smoke it." Hill objected that it wasn't his. At that point, Edwards approached, and he and Hood talked. Edwards then took Hill into the teachers' lounge and told Hill that he had to strip search him because Hood told Edwards that the marijuana was Hill's. After Hill had stripped down to his boxer shorts, Edwards patted him down from his boxer shorts "between the thighs and the butt cheeks." Hill asked to call his mother, and Edwards told him that he wouldn't need her because Edwards would be calling the police, and Hill would be going to the County. When Edwards left the room, Hill dressed and left to go home. As he was leaving, he saw Hood, Edwards, and Fields but did not speak to them. When Hill arrived home, his mother was speaking to Edwards on the telephone, who called to apologize for the strip search and told Hill and Hill's mother that Fields and Hood were playing a trick on Edwards and Hill by saying the marijuana was Hill's. (Doc. 50, Ex. C, Deposition of Lamar Hill, Tr. 23:9 through 42:6.)

Edwards account is different: About 7:45 a.m. on April 21st, he walked from his office to the front entrance of the school where the metal detector is located and saw Hood and Fields with several students. He heard Hood talking about marijuana being wrapped in school paper, but he did not see any marijuana at that time. He then checked students as they came in the door. While Hill was standing in line at the metal detector waiting to be checked, Edwards detected the smell of marijuana in the air. Edwards "pulled him (Hill) over to the side" and told him to stand against the wall. At that time, Hood said, "'I smell it' or something in regard to the smell of marijuana and said 'Check him.'" Edwards then took Hill to the teachers' lounge intending to check his coat and shoes

away from other students per Edwards's own procedure. Once in the teachers' lounge, Hill removed his coat and shoes, and Edwards asked Hill to spread his hands out so Edwards could check his sleeves and around his waste. Edwards denies that he ever asked Hill to remove his shirt, socks, or pants or that Hill ever removed these items. (Doc. 48, Ex. D, Deposition of Vernon Patrick Edwards, Tr. 54:16 through 79:22.) While Edwards admits to calling Hill's mother and conceding that the search (his version) was a mistake because no drugs were found, he denies ever calling it a strip search and denies ever stating that Hood and Fields had played a trick. He further denies ever speaking with Hill directly during the telephone call. (*Id*. at Tr. 104:21 through 108:2.) At the conclusion of his deposition, Edwards confirms that he wrote an unsigned statement dated April 21, 2004. In it, he reveals the following information that was not disclosed during questioning in the deposition setting forth the events described above: (1) Hood had less than one ounce of marijuana in his hands when he was talking to the students about marijuana in notebook paper (Doc. 48, Ex. A, p. 38; *see also* Doc. 48, Ex. D, Deposition of Vernon Patrick Edwards, Tr. 143:18 through 144:24); (2) Fields said, "Oh we got him" (Doc. 48, Ex. A, p. 38); (3) Hood responded, "Take him" (Doc. 48, Ex. A, p. 38); and (4) by "Take him," Hood did not mean for Edwards to search Hill (Doc. 48, Ex. D, Deposition of Vernon Patrick Edwards, Tr.151:17 through 152:10).

Hood's version of the incident is as follows: He was standing and talking to a group of approximately seven students waiting to go through the metal detector, one of whom was Hill, and some staff, including Fields, about a new way of bringing marijuana into school in notebook paper. He had between a nickel bag and a dime bag quantity of marijuana in notebook paper (equivalent he estimates to between a half teaspoon and a teaspoon) that a student had turned in the previous morning. The marijuana was visible in the paper, but Hood did not detect any type of smell or odor

coming from it. When he finished talking to the students, Hill was standing at the metal detector. Hood said to him, "Oh, you have your uniform shirt on today." Then Hood asked him, "You don't have any of this, do you?" Hill responded in the negative. Hood then said "Check 'em" to Fields, meaning for Fields to conduct the usual pat down search conducted on all students upon entering the school. Then, Hood turned to go back to his office and saw Edwards standing approximately five feet from the metal detector. As Hood went to his office, he said, "Mr. Edwards, this is the new way that students are bring [sic] marijuana in, in notebook paper. We need to be on the lookout for that." He folded up the paper, walked into his office, and placed the paper and marijuana under his desk pad. After a minute, he left his office to cover breakfast duty in the cafeteria. At approximately 9:15 a.m., Fields approached Hood in the hall to suggest that Hood check with Edwards as to why Hill was leaving the building "kind of fast." When Hood asked why, Fields told him because Edwards took Hill into the teachers' lounge and searched him. On his way back to his office, Hood encountered the custodian, Iona Gardner, who told Hood that she saw Hill leave the parking lot at a high rate of speed. When Hood returned to his office at approximately 11:00 a.m., he received a message that a reporter from the Belleville News Democrat had called. He tried to return the reporter's call but was unsuccessful. He next called Edwards to tell him not to speak to any reporters but to refer all calls to Hood[1] and then went to Edwards's office to speak to him in person. Edwards told Hood that he just searched Hill "like is normal." (Doc. 48, Ex. E, Deposition of Walter L. Hood, Sr., Tr. 56:10 through 100:22.)

According to Fields, the search and events leading up to it happened as follows: On the

---

[1] Unbeknownst to Hood at that time, Edwards had already spoken to a reporter (Doc. 48, Ex. E, Deposition of Walter L. Hood, Sr., Tr. 88:24).

morning of April 21st, Hood told Fields to hold up students at the door when they came into the school so he could talk to them. When 10 or 13 students were standing at the doorway, including Hill, Hood asked them not to bring drugs into the building. Hood had marijuana and notebook paper in his hand at the time, but Fields did not smell an odor from the marijuana. When Hood finished his speech, he said "Check 'em," and Fields checked the first person, a male student. Hill stepped up, and Edwards yelled out "Lamar Hill, come here." Fields was ready to check Hill, and Edwards asked Hill to come over to where Edwards was. According to Fields, "That was that." He did not know why Edwards called Hill over to him. (Doc. 48, Ex. F, Deposition of Clifford L. Fields, Tr. 30:14 through 34:10.)

This case is not *Cornfield*. The facts underlying the search are disputed. Both Hood and Fields testified that the marijuana that Hood had in his hand had no detectable odor, yet Edwards pulled Hill aside to search him because of the smell of marijuana in the air. There is no evidence that Hill had any problems with drugs or smuggling contraband into school. Moreover, *Cornfield* requires not only that there be reasonable grounds for suspecting that a search will turn up evidence that the student has violated or is violating either the law or the rules of the school, but also that the measures adopted by the school official are reasonably related to the objectives of the search and are not excessively intrusive in light of the age and sex of the student and the nature of the infraction. 991 F.2d at 1320. The search in *Cornfield* was conducted in the boys' locker room in the presence of two teachers, and the plaintiff was asked to disrobe and was given a gym uniform to wear while his clothes were searched. Here, contrary to school policy, Hill was searched without any witnesses, and he was not given clothes to wear. Edwards is not entitled to summary judgment on Hill's Fourth Amendment search and seizure claim brought against him in his individual

capacity. To the extent this is an official capacity claim, however, it is dismissed.

Hood and Fields argue they were not personally involved in the search and are thus entitled to summary judgment. It is not that simple. According to the different versions of the story, Hood's and Fields's conduct contributed to the search. The Court cannot disregard Hill's testimony that Hood reached in Hill's pocket with the marijuana and pulled it out saying, "What is this?;" that Fields stated, "It looks like he is about to smoke it;" and that Edwards told Hill that he was strip searching him because Hood said the marijuana was Hill's. Nor can the Court disregard Edwards's testimony that Hood said something about smelling marijuana, and Fields said, "Oh we got him." Therefore, neither Hood nor Fields is entitled to summary judgment on Hill's Fourth Amendment search and seizure individual capacity claim. The official capacity claims, however, are dismissed.[2]

Relying again on *Cornfield*, the District argues that it cannot be liable under the limited failure to train theory of liability because "[g]iven the nebulous standards governing student searches, school districts and school district administrators cannot be held accountable on this ground because the particular constitutional duty at issue is not clear." *Cornfield*, 991 F.2d at 1327. But unlike *Cornfield*, the District had a search and seizure policy in place long before April 21, 2004, and that policy cites to relevant case law, including *Cornfield*. Moreover, the Alternative High School and specifically Fields, Hood, and Edwards conduct student searches – at least pat down searches – on every student every day as they enter the school. Superintendent Anderson testified that copies of the policy were distributed to all principals and assistant principals in the District, that they were supposed to share and review the policy with their staffs, but that no specific

---

[2]Edwards, Hood, and Fields are not entitled to qualified immunity because the rights of students at public schools to be free from unreasonable searches by school officials was clearly established by 2004.

follow-up was done to be sure such information was shared. (Doc. 50, Ex. G, Deposition of Nathaniel James Anderson, Tr. 23:24 through 37:8.)[3] Fields testified that the first time he saw the policy was two or three weeks before his deposition, which was taken on January 11, 2005. Fields did say that in 1998 or 1999, Hood verbally instructed him on how to physically search students when they enter the building and if a further search is to be conducted in Hood's office, another teacher or witness should be present. (Doc. 48, Ex. F, Deposition of Clifford L. Fields, Tr. 10:16 through 14:11.) Edwards testified that the first time he saw the policy was the end of December 2004. (Doc. 48, Ex. D, Deposition of Vernon Patrick Edwards, Tr. 29:10-16.) Hood testified that neither as principal of East St. Louis High School nor Alternative High School did he make sure that his teachers and administrators had a copy of the policy manual that included the policy for search and seizure of students. He did not know if anyone else in the District at any time had any procedure to provide teachers, counselors, and administrators copies of the manual. (Doc. 50, Ex. E, Deposition of Walter L. Hood, Sr., Tr. 37:12 through 38:5.) Establishing a failure to train as a form of municipal action requires something more in order to rise to the level of deliberate indifference, such as a finding that the policymakers have actual or constructive notice that a particular omission is likely to result in constitutional violations. *Cornfield*, 991 F.2d at 1327. Or a municipality could fail to train its employees with respect to a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face. *Id*. The testimony set forth above and the fact that a pat down search is conducted on every student every day at Alternative High School is sufficient to allow Hill to proceed on his failure to train theory against the District. Hill's request for punitive

---

[3]The Court notes that there was an objection to the form of the question (Doc. 50, Ex. G, Deposition of Nathaniel James Anderson, Tr. 37:7). The objection is overruled, as the Court cannot ascertain that there is anything wrong with the question.

damages against the District, however, is stricken.

With respect to Hill's conspiracy claim, there is insufficient evidence in the record to proceed on this theory. Hill argues that under his version of the events, there is circumstantial evidence from which a jury could find a conspiracy to exist. However, the only evidence from which an agreement to violate Hill's rights could be inferred is: (1) Hood said, "What is this?" and Fields said, "It looks like he is about to smoke it"; (2) Hood and Edwards spoke before Edwards searched Hill; (3) Edwards told Hill during the search that Hood told Edwards the marijuana was Hill's; (4) when Hill left the teachers' lounge, he saw Hood, Fields, and Edwards; (5) Edwards told Hill that Fields and Hood had played a trick on them; and (6) testimony that the marijuana actually was in Hood's hand. Despite this somewhat conflicting and disturbing testimony, it goes to the search claim discussed above and is insufficient to establish a genuine issue of material fact as to whether Hood, Edwards, and Fields, or any of them, conspired to deprive Hill of his constitutional rights. Accordingly, Hill's conspiracy claim (set forth in the complaint as Count VI) is dismissed with prejudice.

<u>Substantive Due Process</u>

No person shall … be deprived of life, liberty, or property, without due process of law …. U.S. CONST. amend. V. [N]or shall any State deprive any person of life, liberty, or property, without due process of law …. U.S. CONST. amend. XIV, § 1. "As one commentator astutely observed, '[a] reader of the Supreme Court's substantive due process cases can come to feel like a moviegoer who arrived late and missed a crucial bit of exposition. Where is the part that explains the connection between this doctrine and the text of the constitutional provisions from which it takes its name?'" *Tun v. Whitticker*, 398 F.3d 899, 900 (7th Cir. 2005) (citation omitted) (describing substantive due

process as "that most amorphous of constitutional doctrines").

The scope of substantive due process is very limited, and courts are reluctant to expand the concept because "guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Id*. at 902. "The essence of due process is the protection of the individual against arbitrary action of government." *Id*. Substantive due process involves the exercise of governmental power without reasonable justification and is most often described as an abuse of government power that "shocks the conscience." *Id*.

The conscience of the Court is not shocked. *See id*. ("Cases abound in which the government action – though thoroughly disapproved of – was found not to shock the conscience."). Put simply, "it is one thing to say that officials acted badly, even tortiously, but – and this is the essential point – it is quite another to say that their actions rise to the level of a constitutional violation. We have declined to impose constitutional liability in a number of situations in which we find the officials conduct abhorrent." *Id*. at 903. For this reason and for those set forth on the record during the December 19th hearing, Hill's substantive due process claims (set forth in the complaint as Counts I, III, and V) are dismissed with prejudice.

Intentional Infliction of Emotional Distress

To prevail on his claim for intentional infliction of emotional distress, Hill must prove that (1) Defendants' conduct was extreme and outrageous, (2) Defendants either intended that their conduct should inflict severe emotional distress, or knew that there was a high probability that their conduct would cause severe emotional distress, and (3) Defendants' conduct in fact caused severe emotional distress. *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994). Hill has not submitted any evidence to establish the intent element. There is no evidence in the record that Defendants

intended to inflict severe emotional distress upon Hill. Alternatively, while Hill has submitted the report of Dr. Cuneo describing Hill's heartbreaking past, there is no evidence to show that Defendants were aware of this past or the effect that the search would have upon him. Therefore, Hill's intentional infliction of emotional distress claim (set forth in the complaint as Count IX) is dismissed with prejudice.

### Remaining State Law Claims

Defendants list numerous immunities purportedly shielding them from liability. Defendants bear the burden to establish the propriety of summary judgment on these affirmative defenses. They have failed to meet their burden by simply listing and quoting various sections of the Illinois Local Governmental and Governmental Tort Immunity Act without any analysis as to which section applies to which Defendant and why. In any event, Hill has raised a factual dispute as to whether Edwards, Hood, and Fields were acting in good faith.

Finally, Hood, Edwards, and Fields are not shielded by the doctrine of public officials' immunity discussed in *Currie v. Lao*, 592 N.E.2d 977, 983-984 (Ill. 1992). As recognized by the Illinois Supreme Court, that doctrine has been applied in cases where the defendants are charged with negligently performing a function that is uniquely related to their official duties as State employees. *Id*. at 984. This is not the situation here, where Hill has charged Defendants with intentional conduct.

Hill's requests for attorney fees under his false imprisonment and battery claims (set forth in the complaint as Counts VII and VIII, respectively) are stricken for the reasons set forth during the hearing held on December 6, 2004.

Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 47) is **GRANTED in part and DENIED in part**. The following will proceed to trial: Hill's claim under 42 U.S.C. § 1983 for unlawful search and seizure in violation of the Fourth and Fourteenth Amendments against Edwards, Hood, and Fields, in their individual capacities only, and against the District; Hill's claim under state law for false imprisonment against all Defendants; Hill's claim under state law for battery against Edwards; and Jones's claim under state law for medical expenses against all Defendants.

**IT IS SO ORDERED.**

DATED: 01/06/2006

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge